UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELK GROVE UNIFIED SCHOOL DISTRICT,<br><br>        Plaintiff,<br><br>    v.<br><br>E.G., a minor, by and through his Parent, IDA GARRETT,<br><br>        Defendant. | No. 2:15-cv-02312-TLN-KJN<br><br>**ORDER RE SUMMARY JUDGMENT** |

    This matter is before the Court on the motion for summary judgment filed by Plaintiff Elk Grove Unified School District ("District") (ECF No. 20), and on the motion for summary judgment filed by Defendant E.G. ("E.G." or "Student") (ECF No. 23). For the following reasons, the Court GRANTS District's motion and DENIES E.G.'s motion.

///
///
///
///
///
///
///

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   Underlying Complaint

The dispute in this case arises from District's desire to conduct assessments of E.G. pursuant to the provisions of the Individuals with Disabilities Education Act ("IDEA"). (ECF No. 1 ¶¶ 1, 13–14.)[1] E.G. is a student within District's jurisdictional boundaries who is eligible for special education services. (ECF No. 1 ¶ 8.) In 2015, District filed due process complaint number 2015010203 before the State of California's Office of Administrative Hearings ("OAH"), requesting that it be allowed to vindicate its "right to assess" E.G. for the purpose of determining what special education services he required. (ECF No. 19 at 78.) In March 2015, following discussions between District and E.G.'s representatives and before the OAH rendered a decision regarding District's right to assess E.G., the parties entered into a settlement agreement. (ECF No. 1 ¶¶ 10–14; ECF No. 19 at 78.) As far as the record reflects, no order ever issued from the OAH adjudicating this due process complaint number 2015010203. (*See* ECF No. 19 at 78 ("Judge Redmon first ruled she would render a decision despite the settlement. The Student was in favor of a decision however the order was changed and no decision was released.").)

One component of the parties' settlement agreement was that District would have the right to assess E.G. for the purpose of determining what special education services E.G. would be entitled to receive. (ECF No. 1 ¶¶ 13–14; ECF No. 19 at 97.) Another component of the settlement agreement was that District would retain its right to initiate a subsequent due process complaint in front of the OAH in the event that E.G.'s parent refused to make E.G. available for assessment. (ECF No. 19 at 99 ("In the event Parent does not make Student available for the assessments contemplated above, the District reserves the right to file a new due process filing relating to the Assessment Plan set forth herein.").)

District alleges that it was unable to complete the assessment contemplated in the March 2015 settlement agreement because E.G.'s parent refused to make him available for observation. (ECF No. 1 ¶¶ 17–18.) Accordingly, District filed another due process complaint, numbered

---

[1]   Unless otherwise indicated, all ECF citations in this Order refer to the case numbered 2:15-cv-02312-TLN-KJN.

2015080481, before the OAH "seeking an order from OAH that it is permitted to complete the assessments and that Parent make Student available for the assessments." (ECF No. 1 ¶ 18.) The OAH administrative law judge who adjudicated District's complaint dismissed it on jurisdictional grounds. (ECF No. 1 ¶ 21; ECF No. 1-1.) Specifically, the OAH reasoned that due process complaint number 2015080481 was essentially a request by District to enforce the terms of the March 2015 settlement agreement requiring that E.G. be made available for District to assess him. (ECF No. 1-1 at 2 ("Elk Grove's complaint is a request to enforce the settlement agreement.").) Relying on the holding of *Wyner ex rel. Wyner v. Manhattan Beach Unified School District*, 223 F.3d 1026, 1028–29 (9th Cir. 2000), the OAH held that it did not have "jurisdiction over claims alleging a failure to comply with a settlement agreement" and dismissed District's due process complaint on that basis. (ECF No. 1-1 at 1.) Plaintiff filed a motion for reconsideration, but that motion was denied. (ECF No. 1 ¶¶ 22–23; ECF No. 1-2.)

District's Complaint appeals the order of dismissal rendered by the OAH in due process complaint 2015080481. (ECF No. 1 at 2.) The Complaint alleges that "[u]nless the OAH decision is invalidated by this Court, and the decision of the OAH is corrected, the District will not be able to conduct assessments of minor E.G., which, by law, it is allowed to do." (ECF No. 1 at 2.)

### B. Motions for Summary Judgment

Both parties filed motions for summary judgment. (ECF No. 20; ECF No. 23.) District's motion argues that the OAH order incorrectly concluded that the OAH was without jurisdiction to adjudicate District's request to assess E.G. (*See* ECF No. 20 at 6 ("The Order issued by OAH should be reversed because the District specifically and contractually provided for the right to file a request for due process hearing regarding the right to assess.").) District accepts the principle that the OAH "does not have the power to enforce a settlement agreement." (ECF No. 20 at 9–10.) Nonetheless, District asserts that the OAH order should be overturned because District was not asking the OAH to enforce the March 2015 settlement agreement; instead, "District was acting outside of the Agreement to attempt to secure a ruling from OAH regarding the right to assess a student pursuant to the IDEA." (ECF No. 20 at 10.)

3

| | |
|---|---|
| 1 | E.G.'s motion argues that the Court should grant summary judgment in his favor by |
| 2 | upholding the OAH order as consistent with well-established law that "due process hearings are |
| 3 | not the appropriate venue to address an alleged noncompliance with a settlement agreement." |
| 4 | (ECF No. 23 at 5–6.) E.G. asserts that "E.G. and the District had a global Settlement Agreement" |
| 5 | which contemplated further assessments, meaning that District's request for the OAH to compel |
| 6 | E.G. to proceed with such assessments is, at bottom, an effort to have the OAH enforce the |
| 7 | settlement agreement. (ECF No. 23 at 5.) Echoing the OAH administrative law judge's reliance |
| 8 | on *Wyner*, E.G. argues that the OAH only has jurisdiction to hear a request to enforce a settlement |
| 9 | agreement where the due process complaint alleges that a school district is denying an eligible |
| 10 | student a free appropriate public education, which District's complaint in OAH case number |
| 11 | 2015080481 did not allege. (ECF No. 23 at 5–6.) |

### C.    Related 2016 Case

While the parties' summary judgment motions in the instant case were pending before the Court, District filed a new administrative action before the OAH seeking to enforce the terms of a new assessment plan that was dated January 12, 2016. (*See* ECF No. 34 at 3, Case No. 2:16-cv-02412-TLN-KJN.) For reasons not relevant to the instant motions, the OAH ruled in District's favor in that 2016 OAH action numbered 2016020899. (*See* ECF No. 34 at 3–5, Case No. 2:16-cv-02412-TLN-KJN.) The OAH in case number 2016020899 ruled that District was entitled to conduct an assessment of E.G. pursuant to the new assessment plan dated January 2016. (ECF No. 34 at 5, Case No. 2:16-cv-02412-TLN-KJN.)

E.G. appealed the OAH's decision in the 2016 action to this Court. (*See* ECF No. 1, Case No. 2:16-cv-02412-TLN-KJN.) The Court entered an order relating the instant 2015 case (in which District appealed an OAH decision adverse to it) to the 2016 case (in which E.G. appealed an OAH decision adverse to him). (ECF No. 33, Case No. 2:16-cv-02412-TLN-KJN.) The Court granted summary judgment in District's favor in the 2016 case, upholding the OAH's 2016 decision that District has the right to conduct an assessment of E.G. pursuant to the IDEA. (ECF No. 34 at 13, Case No. 2:16-cv-02412-TLN-KJN.)

///

D. Supplemental Briefing

In the instant case, the Court requested supplemental briefing from the parties to address whether the Court's entry of judgment in favor of District in the 2016 case rendered the 2015 case moot. (ECF No. 31.) District filed a responsive brief arguing that the instant case is not moot "because of the fee shifting provisions of the IDEA." (ECF No. 32 at 3.) According to District, "prevailing party status needs to be determined for this case in order to determine whether the District is potentially required to pay attorney fees in this case." (ECF No. 32 at 3.) E.G. also filed a responsive brief that appears to take the position that the Court's order dismissing yet another related case from 2017 confirms that District's summary judgment motion in the instant case is meritless (ECF No. 33 at 4 ("This Court specifically addressed this issue in related case 2:17-cv-0729-TLN-KJN when it determined it did not have jurisdiction to proceed on E.G.'s appeal . . . .")).

## II. STANDARD OF LAW

### A. Relevant Provisions of the IDEA

#### i. Complaint Procedures of the IDEA

In relevant part, the IDEA provides that state and local educational agencies establish procedural safeguards to ensure that children with disabilities and their parents receive a free appropriate public education. 20 U.S.C. § 1415(a). Such procedural safeguards must include the opportunity for any party to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child." *Id.* § 1415(b)(6)(A). Upon the presentation of such a complaint, "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." *Id.* § 1415(f)(1)(A).

In California, due process hearings envisioned by the foregoing sections of the IDEA are conducted by the OAH, which is an independent state agency. *Fairfield-Suisun Unified Sch. Dist. v. Cal. Dep't of Educ.*, 780 F.3d 968, 969 (9th Cir. 2015) (citing *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1085, 1092 (9th Cir. 2012)). The OAH has jurisdiction over due process complaints

brought by a student's parent or by the public agency involved where, *inter alia*, "[t]he parent or guardian refuses to consent to an assessment of the child." Cal. Educ. Code § 56501(a)(3). The OAH, however, "lacks jurisdiction to enforce its own orders" issued after a due process hearing. *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1069–70 (9th Cir. 2002); *see also Wyner*, 223 F.3d at 1029 ("Failure to comply with an order emanating from a prior due process hearing is not within the [OAH's] specified jurisdiction.").

        *ii.*   *District Court Review of Administrative Decisions Rendered Pursuant to the IDEA*

"A party dissatisfied with the outcome of a due process hearing may obtain further review by filing a civil action in state or federal court." *Fairfield-Suisun*, 780 F.3d at 969 (citing 20 U.S.C. § 1415(i)(2)(A)). When this occurs, the party challenging the administrative decision bears the burden of persuasion on each claim challenged. *Pointe Educ. Servs. v. A.T. ex rel. A.T.*, 610 F. App'x 702, 703 (9th Cir. 2015) (citing *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009)). The reviewing district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). On the one hand, "'complete de novo review' of the *administrative* proceeding 'is inappropriate.'" *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (quoting *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)). But on the other hand, "blind deference is not appropriate" and "the district judge must actually examine the record to determine whether it supports the [OAH's] opinion." *M.C. ex rel. M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 n.1 (9th Cir. 2017).

As should be clear from the foregoing, "[t]hough the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995); *see also J.L. v. Manteca Unified Sch. Dist.*, No. 2:14-cv-01842-

WBS-EFB, 2016 WL 3277260, at *5–6 (E.D. Cal. June 14, 2016) ("The Ninth Circuit has recognized that the procedure under the IDEA is 'not a true summary judgment procedure,' but is 'essentially . . . a bench trial based on a stipulated record.'" (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993))).

### B. Mootness

"The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution." *Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996) (quoting *GTE Cal., Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994)). An actual case or controversy must be live at all times during a particular litigation, not simply on the date the action is initiated. *Id.* (citing *Roe v. Wade*, 410 U.S. 113, 125 (1973)). Accordingly, under the jurisdictional doctrine of mootness, "[i]f an action or a claim loses its character as a live controversy, then the action or claim becomes 'moot,' and [a reviewing court] lack[s] jurisdiction to resolve the underlying dispute." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797–98 (9th Cir. 1999) (en banc).

There are, however, exceptions to the application of the mootness doctrine that apply in the IDEA context. One such exception encompasses "issues regarding appropriate placement" of a student because this question is "capable of repetition, yet evading review." *Marcus I. ex rel. Karen I. v. Dep't of Educ.*, 434 F. App'x 600, 601 (9th Cir. 2011) (quoting *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. ex rel. Holland*, 14 F.3d 1398, 1403 (9th Cir. 1994)). "This rule is premised on the fact that Individual Education Plans (IEPs) are reviewed annually, providing insufficient time for judicial review, yet often a conflict between a disabled student's parents and a school district regarding proper placement 'is a continuing one and will arise frequently.'" *Id.*

#### i. Attorneys' Fees

District courts have discretion to award reasonable attorneys' fees to a party that prevails in litigating an appeal from an administrative determination made pursuant to provisions of the IDEA. *See* 20 U.S.C. § 1415(i)(3)(B)(i). Depending on the outcome of the appeal brought before the district court, a prevailing party may be (i) the parent of a child with a disability, (ii) "a State

educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation," or (iii) a "State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose." *Id.*

Where the only remaining issue in a given case is the question of a prevailing party's entitlement to attorneys' fees, "a claim for attorney's fees does not preserve a case which otherwise has become moot on appeal." *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981). Instead, a district court may retain ancillary jurisdiction over the question of attorneys' fees even after the substantive issues in a case become moot. *See K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014) (noting that courts can exercise ancillary jurisdiction over attorneys' fee disputes as being collateral to the underlying litigation and that such ancillary jurisdiction "exists even after the underlying litigation has concluded"); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) ("No Article III case or controversy is needed with regard to attorneys' fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot.").

### III. ANALYSIS

#### A. The Instant Case Is Not Moot

The Court notes with some measure of frustration that in their responses to the Court's request for supplemental briefing on the issue of mootness, neither party provided a single piece of legal authority on the topic. (*See* ECF No. 31; ECF No. 32; ECF No. 33.) This forced the Court to undertake its own research *sua sponte*, research which demonstrated that neither party's position on the mootness issue is convincing.

District's cursory argument that the question of legal fees saves this case from being moot appears to conflict with long-standing Ninth Circuit authority that "a claim for attorney's fees does not preserve a case which otherwise has become moot on appeal." *Ford*, 650 F.2d at 1143. At the same time, E.G.'s argument that the Court's order on a motion to dismiss in a related 2017

matter moots the instant case misrepresents the Court's holding in the 2017 matter, which simply found that E.G.'s complaint in the 2017 case was time-barred without addressing the jurisdictional issues presented in the instant matter. (*See* ECF No. 24 at 3, Case No. 2:17-cv-00729-TLN-KJN ("Accordingly, Plaintiff's complaint is dismissed for failure to timely file in accordance with the statute of limitations.").)

Despite the parties' failure to properly brief the issue of mootness, however, the Court finds that the instant case is not moot because the dispute at its heart is capable of repetition, yet evading review. The Ninth Circuit in *Rachel H.*, 14 F.3d at 1402–03, reasoned that because the IDEA mandates annual renewal of IEPs for disabled students, because the school district and Rachel H.'s parents had conflicting perceptions of the district's obligations to provide Rachel H. with services under the IDEA, and because the nine-month school year did not provide enough time for judicial review, the parties' disagreement over Rachel H.'s appropriate placement was not moot. Here, the dispute between District and E.G. is similar because it boils down to whether District has the right to conduct an assessment of E.G. (*See* ECF No. 1 at 2 ("Unless the OAH decision is invalidated by this Court, and the decision of the OAH is corrected, the District will not be able to conduct assessments of minor E.G., which, by law, it is allowed to do.").) It is this assessment which forms the basis for District's determination of the appropriate services to provide to E.G. each school year. (*See* ECF No. 19 at 94 ("The district proposes to assess your child to determine his/her eligibility for special education services . . . .").) Just because District was granted the right to assess E.G. in a related 2016 matter does not mean that this same dispute about assessing E.G. will not recur in subsequent school years, particularly if E.G.'s parent or if District exercise their right under the IDEA to initiate reevaluation of E.G. on an annual basis. *See* 20 U.S.C. § 1414(a)(2). As a result, District and E.G.'s inability to agree on the scope of his evaluation is capable of repetition each school year, and due to the relatively short length of that school year, will continue to evade judicial review. *See Marcus I.*, 434 F. App'x at 601 ("Individual Education Plans (IEPs) are reviewed annually, providing insufficient time for judicial review, yet often a conflict between a disabled student's parents and a school district

///

regarding proper placement 'is a continuing one and will arise frequently.'" (quoting *Rachel H.*, 14 F.3d at 1403)).

Accordingly, the Court finds that the question presented in this case is not rendered moot by the fact that District won the right to conduct an assessment of E.G. in a related case that arose the year after the instant case was filed.

### B. The OAH Had Jurisdiction to Hear District's Due Process Complaint

After carefully examining the administrative record and the relevant statutory and case law, the Court finds that the OAH relied on an erroneous reading of the Ninth Circuit's *Wyner* decision in dismissing District's due process complaint number 2015080481 prior to an evidentiary hearing.

#### i. The *Wyner* Decision

In *Wyner*, 223 F.3d at 1027, the Ninth Circuit faced the limited task of determining "the jurisdiction of the California Special Education Hearing Office (SEHO) to hear issues concerning compliance with a final order it had entered." A student with the surname of Wyner had initiated a due process complaint against his school district before the SEHO, which was a predecessor agency that performed much the same function as the OAH, but the parties entered into a settlement agreement during the due process hearing. *Id.* The settlement agreement specifically required the district to provide Wyner with five hours per week of specialized tutoring services. *Id.* Rather than terminating Wyner's due process complaint on grounds that a settlement agreement had been reached, "[t]he hearing officer ordered the parties to abide by the terms of the settlement." *See id.*

Wyner initiated a new due process complaint two years later that claimed his school district was failing "to comply with the April 1995 Settlement Agreement as directed by the SEHO order." *Id.* at 1028. The Ninth Circuit held that an administrative agency hearing due process complaints brought pursuant to the IDEA only has jurisdiction to hear such complaints when those complaints concern the "enumerated circumstances" set forth in section 56501(a) of the California Education Code, and "[f]ailure to comply with an order emanating from a prior due process hearing is not within the specified jurisdiction." *Id.* at 1028–29. Accordingly, the Ninth

Circuit upheld the hearing officer's dismissal of Wyner's second due process complaint because it was an effort to enforce compliance with a prior final administrative order. *Id.* at 1029–30.

### ii. The OAH's Reliance on *Wyner*

*Wyner* is the only binding authority cited in the OAH's written decision dismissing District's complaint in OAH case number 2015080481. (*See* ECF No. 19 at 141–42 (discussing *Wyner*'s holding and applicability to District's due process complaint).) As the OAH correctly wrote in that dismissal order, "[t]he *Wyner* court held that 'the proper avenue to enforce SEHO orders' was the California Department of Education's compliance complaint procedure." (ECF No. 19 at 141–42.) The OAH then reasoned that because District's due process complaint was essentially a request to enforce the terms of the 2015 settlement agreement, "[p]ursuant to the authority discussed above, OAH does not have jurisdiction to entertain Elk Grove's claim." (ECF No. 19 at 142.) This analysis overlooked the fact that the most salient element in the Ninth Circuit's *Wyner* analysis was the existence of a prior SEHO order — not the existence of a settlement agreement itself — mandating the parties to comply with their settlement agreement. *See Wyner*, 223 F.3d at 1030 (endorsing the hearing officer's reasoning that the prior SEHO order mandating compliance with the parties' settlement agreement "may not be revisited" before the SEHO because it "was the final administrative determination of that matter by the Hearing Office"); *Porter*, 307 F.3d at 1074 ("In *Wyner* we held that California's SEHO does not have jurisdiction to hear a complaint alleging failure to comply with *an order from* a prior due process hearing." (emphasis added)).

Here, unlike in *Wyner*, the record contains no evidence that the OAH ever issued an order directing District and E.G. to comply with the settlement agreement that resolved OAH case number 2015010203. (*See* ECF No. 19 at 78 ("The Student was in favor of a decision however the order was changed and no decision was released.").) This fact significantly limits *Wyner*'s persuasive force in the instant matter. Indeed, other district courts in the Ninth Circuit have emphasized *Wyner*'s limited applicability in cases like this where no prior administrative order exists. *See, e.g.*, *C.T. ex rel. D.T. v. Vacaville Unified Sch. Dist.*, No. CIV. S-06-197 FCD JFM, 2006 WL 2092613, at *6 n.8 (E.D. Cal. July 27, 2006) ("In *Wyner,* a hearing officer actually

issued *an order* requiring both parties to comply with the settlement agreement. Accordingly, the decision constituted an unappealable 'final administrative determination.' Here, however, there is no indication that after defendant VUSD and plaintiff initially entered the Agreement, the hearing judge issued an *actual order* requiring compliance."); *R.K. ex rel. T.K. v. Hayward Unified Sch. Dist.*, No. C 06-07836 JSW, 2007 WL 2778702, at *8 (N.D. Cal. Sept. 21, 2007) ("In the absence of a final OAH order regarding enforcement of the settlement, *Wymer* [sic] is not a jurisdictional bar to the OAH hearing such claims [relating to a settlement agreement]."). Accordingly, since no prior administrative order exists that would bring the instant dispute within *Wyner*'s ambit, the OAH should not have relied solely on *Wyner* to dismiss District's due process complaint number 2015080481.

### iii. California's Education Code

The foregoing is particularly true when viewed in the context of California's statutory scheme governing IDEA due process disputes.

The text of California's Education Code affords the OAH jurisdiction to hear due process complaints brought by an involved public agency, such as District, where "[t]he parent or guardian refuses to consent to an assessment of the child." Cal. Educ. Code § 56501(a)(3). E.G. does not identify — nor has the Court found — anything in the statutory text to suggest that section 56501(a)(3) is inapplicable in cases involving settlement agreements. *See id.* One arguably relevant statutory imperative is contained in section 56501.5(f), which states that parties to an IDEA dispute may execute a legally binding agreement prior to a due process hearing that is enforceable in state and federal court. *Id.* § 56501.5(f). Another arguably relevant statute is section 56503, which states that parties to an IDEA dispute may still engage in an informal dispute resolution process even if a request for a due process hearing has been filed or has already begun. *Id.* § 56503.[2]

///

---

[2] A third arguably relevant provision is section 56505(h), which states that a due process hearing is "the final administrative determination and binding on all parties." *Id.* § 56505(h). But this section is inapplicable to the instant case because no due process hearing in case number 2015080481 occurred; instead, the OAH dismissed District's due process complaint prior to the hearing. (ECF No. 20 at 6 (recounting procedural history of due process case number 2015080481).)

Each of these arguably relevant statutory provisions encourages settlement of educational disputes. *See* Cal. Educ. Code § 56508 (expressing the California State Legislature's intent that parents, public agencies, and others take steps aimed at "resolving differences in a nonadversarial atmosphere with the mutual goal of providing a free appropriate public education for children and youth with disabilities"). But the interpretation of the law proposed by E.G. and adopted by the OAH in its order dismissing case number 2015080481 would actually discourage public agencies and parents alike from settling their disputes. This is because that interpretation would mean that a party entering into a settlement agreement would foreclose the option of pursuing a due process hearing at a later date on any of the topics over which the OAH has jurisdiction, *see* Cal. Educ. Code § 56501(a), so long as any of those topics were also encompassed by a settlement agreement (*see* ECF No. 23 at 6 ("OAH does not have jurisdiction to hear due process claims regarding breach of a settlement agreement unless it is alleged that the breach resulted in a denial of a FAPE to Student.")). It is unlikely that California's system of adjudicating IDEA disputes would encourage informal dispute resolution, but at the same time contain an implied limitation on procedural safeguards for parties who do settle their disputes. *See* Cal. Educ. Code § 56508.

The OAH decision, however, effectively imported such a limitation into section 56501(a)(3) because that order focused almost entirely on the terms of the settlement agreement, without exploring whether or why that settlement agreement rendered inapplicable the plain terms of the California Education Code. (*See, e.g.*, ECF No. 1-1 at 2 (discussing the "terms of the settlement agreement [that] call for Elk Grove to conduct assessments pursuant to an assessment plan" and stating that "[t]hese terms form the basis for Elk Grove's claims against Student in their complaint").)[3] Under those plain terms, the OAH has jurisdiction to hear due process complaints

---

[3] The Court acknowledges that District, at best, only obliquely called the OAH's attention to the interplay between the OAH's statutory jurisdiction and the terms of the 2015 settlement agreement. (*See* ECF No. 19 at 119 (arguing that District's requested assessments of E.G. "are required to provide District with information that is necessary to develop an appropriate educational offer for Student"), 133 (arguing that E.G.'s motion to dismiss was "not seeking to dismiss issues that are facially outside of OAH's jurisdiction" and that the main factual dispute centered around whether "District has had the ability to complete the assessment/observations which require Student's presence at school").) Nonetheless, because *Wyner* was so heavily relied on by the OAH and because Student's motion to dismiss OAH case number 2015080481 directed the OAH's attention to section 56501(a) of the California Education Code, the Court's holding is based on issues that were raised and should have been more fully considered below. (*See* ECF No. 19 at 87 (citing "Ed. Code, § 56501, subd. (a)").)

brought by an involved public agency where a parent refuses to make its child available for an assessment, without reference to whether there is a settlement agreement that contemplates an assessment plan. Cal. Educ. Code § 56501(a)(3) ("[T]he public agency involved may initiate the due process hearing procedures prescribed by this chapter under any of the following circumstances: . . . (3) The parent or guardian refuses to consent to an assessment of the child."); *see also Fresno Unified Sch. Dist. v. K.U.*, No. 1:12-CV-01699-MJS, 2014 WL 3839796, at *14 (E.D. Cal. July 30, 2014) (noting that "a parent's refusal to consent to an assessment is grounds for seeking a due process hearing under California law"). The OAH decision's primary focus on the fact that a settlement agreement existed was erroneous because it failed to address a statute which, on its face, is silent about the effect of such a settlement agreement on its otherwise unequivocal grant of jurisdiction to the OAH to hear due process disputes predicated on a parent's refusal to consent to a child's assessment.

Accordingly, the Court must conclude that the OAH's determination that it did not have jurisdiction over a dispute involving parental refusal to consent to assessment is not supported by the record. *See M.C.*, 858 F.3d at 1194 n.1 (noting that on appeal from a decision issued by the OAH, "the district judge must actually examine the record to determine whether it supports the [OAH's] opinion").

### IV. CONCLUSION

The OAH has jurisdiction to hear due process complaints arising from circumstances where a "parent or guardian refuses to consent to an assessment of the child." Cal. Educ. Code § 56501(a)(3). This is the nature of the dispute in the instant case. (*See* ECF No. 23 at 5 ("The dispute that led to the OAH case was whether the District could conduct the assessments without parental consent because it alleged E.G.'s mother was not making the child available for the assessment as provided in the Agreement.").)

For the foregoing reasons, District's motion for summary judgment (ECF No. 20) is GRANTED and E.G.'s motion for summary judgment (ECF No. 23) is DENIED.

///

///

14

IT IS SO ORDERED.

Dated: September 11, 2019

_____
Troy L. Nunley
United States District Judge